**Glen GADONAS, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (BOEING DEFENSE & SPACE GROUP), Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 11, 2007.

Decided Aug. 1, 2007.

---

John C. Jackson, Chester, for petitioner.

David G. Greene, Philadelphia, for respondent.

BEFORE: SMITH–RIBNER, Judge, SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

Glen Gadonas petitions for review of an order entered by the Workers' Compensation Appeal Board (Board) that reversed in part the order of Workers' Compensation Judge John Liebau (WCJ) granting the petition to review benefit offset. The Board held that Boeing Defense & Space Group (Employer) is entitled to an offset against Gadonas' workers' compensation benefits for disability pension benefits that he received, and it modified the WCJ's order to reflect that only those monthly disability pension benefits received by Gadonas within sixty days prior to November 24, 2003, the date of a $4500 deposit to his Individual Retirement Account (IRA), qualify as a rollover not subject to offset. The question involved is whether the Board erred by holding that the full amount of the $4500 that Gadonas deposited into his IRA did not qualify as a rollover.

I

Gadonas' claim petition was granted in January 2000 for injuries that he sustained at work on March 2, 1998 when he twisted his ankle and fell forward into a pothole injuring his low back. He returned to light-duty work March 16, 1998 and worked until May 15, 1998. The WCJ who granted the claim petition awarded benefits of $561 per week from March 2 to

March 16 and from May 15, 1998 ongoing. Gadonas testified that he continues to suffer chronic low back pain; in 2003 Gadonas decided to apply for disability retirement. When he met with Employer's benefits administrator, Joan Scone, he was informed that his disability pension would not be offset by his workers' compensation. He began receiving a new disability pension of $738 per month effective May 1, 2003.

Almost five months later, on September 24, 2003, Employer filed its notice of workers' compensation offset.[1] On November 3, 2003, Gadonas filed a petition to review benefits offset. On November 24, 2003, he took out a loan for $4500 and deposited the funds into a self-directed IRA, representing the amount of pension benefits that he had received. It was his intention to "roll over" these payments into the IRA. The WCJ found Gadonas' testimony credible, and he determined that Gadonas' actions complied with 34 Pa.Code § 123.9(c), which provides: "Pension benefits which are rolled over into an IRA or other similarly restricted account may not offset workers' compensation benefits, so long as the employe does not withdraw or otherwise utilize the pension benefits from the restricted account while simultaneously receiving workers' compensation benefits from the liable employer." The WCJ granted the petition to review benefit offset and ordered ongoing benefits of $561 per week without a pension offset. The

WCJ denied, as well, Employer's termination petition and Gadonas' penalty petition relating to medical payments, but those matters are not involved on this appeal.

Employer appealed to the Board, which agreed with Employer that Gadonas did not establish that he rolled over his pension benefits into an IRA. Section 204(a) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 71(a), provides in part: "[T]he benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employe shall also be credited against the amount of the award made under sections 108 and 306, except for benefits payable under section 306(c)." An IRA is defined in 34 Pa.Code § 123.2 as "[a]n individual retirement account as that term is utilized in 26 U.S.C.A. §§ 219 and 408(a)." The Board stated that pursuant to 26 U.S.C. § 408(d)(3)(A)(i)-(ii), a rollover contribution must be made no later than the sixtieth day after receiving the payment, and Gadonas testified that he had spent the pension payments since May.

The Board first decided that the WCJ erred in determining that Gadonas met his burden to establish that the pension benefits he received during the pendency of the litigation or those that he would receive ongoing into the indefinite future were rolled over into an IRA. Because the WCJ

---

1. Employer's notice applied the method prescribed in 34 Pa.Code § 123.9(a) to calculate a weekly offset from a monthly pension payment, namely dividing the monthly amount by 4.34:

 As of 5/1/03, claimant began receiving $734.66 per month in a pension, funded by Boeing. Claimant's weekly pension offset is $169.28 ($734.66 : $4.34 [sic] = $169.28). Claimant is paid bi-weekly, so his bi-weekly offset is $338.56. Claimant

 was overpaid $169.28 per week from 5/1/03 until 10/13/03 (23–5/7ths weeks). Accordingly, claimant has been overpaid $4,014.35 (23–5/7ths weeks × $169.28). At claimant's current appropriate rate of $391.72 per week ($783.44 bi-weekly)[,] Boeing is entitled to a suspension from 10/13/03 through 12/24/03 to recoup the overpayment. As of 12/25/03 claimant will again begin receiving $783.44 bi-weekly.

 Notice of Workers' Compensation Benefit Offset, p. 2; Reproduced Record 27a.

accepted Gadonas' testimony only as to the single deposit that he made after borrowing the money, his evidence was insufficient to establish that he continued to make deposits during the pendency of the litigation. In regard to the $4500, the Board stated that because 34 Pa.Code § 123.2 cites to Sections 219 and 408(a) of the Internal Revenue Code of 1986 (Internal Revenue Code) in defining an IRA and consistency in the law is of great benefit, the best approach is to apply settled interpretations from the Internal Revenue Code concerning whether an IRA deposit constitutes a rollover. The Board ordered that only pension payments received within sixty days of the date of the deposit could qualify as a rollover.[2]

## II

Gadonas argues that the Board erred by holding that the full amount of the $4500 deposited into his IRA did not qualify as a rollover. He began receiving the pension benefits in June 2003, effective May 1, 2003, and he was not notified until September 23, 2003 that Employer was seeking to offset benefits already received. Gadonas testified that he consulted the Department of Labor and Industry's website and learned that "if the moneys are deposited into an IRA, joint, singular or any other type of account similar to these, the money cannot be offset." N.T. November 25, 2003, p. 29; Reproduced Record (R.R.) 78a. The WCJ credited Gadonas' testimony that it was his intent to roll over pension benefits that he received to date into his IRA. Citing *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 652 A.2d 797 (1995), Gadonas submits that the

Board usurped the WCJ's authority to make credibility determinations when it reversed the WCJ's order.

Second, Gadonas argues that the Board erred when it grafted new requirements onto 34 Pa.Code § 123.9(c). The Board decided that the "best approach" was to apply settled interpretations of the Internal Revenue Code to limit rollovers to amounts deposited into an IRA within sixty days of receipt. As quoted above, however, nothing in Section 123.9(c) establishes this requirement, and the Board exceeded its authority in imposing this new requirement.

■ Third, the Board erred by failing to take into account how Employer misled Gadonas with regard to its intention to take a pension offset against his workers' compensation benefits. The WCJ credited Gadonas' testimony that he was informed by the benefits administrator that his disability pension would have no effect on his workers' compensation benefits. Employer waited several months before it notified Gadonas that it would take a pension offset back-dated to May 1, 2003. If a defendant fraudulently or deceptively lulls a claimant into a false sense of security regarding the filing of a claim, the defendant will be estopped from using the claimant's inaction as a basis to deny the claim. *Zafran v. Workers' Compensation Appeal Board (Empire Kosher Poultry, Inc.)*, 713 A.2d 698 (Pa.Cmwlth.1998). Even if the Internal Revenue Code is applied, Gadonas maintains that the rule should be that a claimant has sixty days from the date when he is first notified of a pension offset to make an IRA rollover, not from the first receipt.

---

**2.** The Court's review is limited to determining whether there was a constitutional violation or an error of law, whether any practice or procedure of the Board was not followed and whether necessary findings of fact are supported by substantial evidence. *Helvetia Coal Co. v. Workers' Compensation Appeal Board (Learn)*, 913 A.2d 326 (Pa.Cmwlth.2006).

Finally, Gadonas asserts that the Board erred in holding that he had a continuing obligation throughout the litigation to present evidence to establish that he made IRA deposits. He notes that under 34 Pa.Code § 123.3 the amount of benefits that he receives may be reported on the LIBC–756 form. Section 123.3(a) specifies: "This includes amounts withdrawn or otherwise utilized from pension benefits which are rolled over into an IRA or other similarly restricted account while at the same time the employe is receiving workers' compensation benefits."

Employer first argues that the offset was properly calculated because the Act prohibits double recovery for the same period of disability. In 1996 the legislature amended Section 204(a) of the Act to reduce the cost of workers' compensation by allowing an employer to avoid paying duplicate benefits for the same loss of earnings. *Kramer v. Workers' Compensation Appeal Board (Rite Aid Corp.)*, 584 Pa. 309, 883 A.2d 518 (2005); *Murphy v. Workers' Compensation Appeal Board (City of Philadelphia)*, 871 A.2d 312 (Pa. Cmwlth.2005). The record shows that Employer fully funded the disability pension and the workers' compensation benefits. The regulation at 34 Pa.Code § 123.8(a) provides: "Workers' compensation benefits otherwise payable *shall* be offset by the net amount an employe receives in pension benefits to the extent funded by the employer directly liable for the payment of worker's compensation," and Section 123.8(b) provides: "The pension offset *shall* apply to amounts received from defined-benefit and defined-contribution plans." (Emphasis added.) The plan involved here is a defined-benefit plan.

Section 123.9 relates to application of offset for pension benefits. Section 123.9(a) specifies how pension benefits received on a monthly basis shall be treated for purposes of a weekly offset; Section 123.9(b) addresses how the calculation is performed for a lump sum pension payment; and Sections 123.9(c) and 123.9(d) address pension payments that are rolled over into an IRA.[3] Here, no lump sum payment is involved, so Section 123.9(b) does not apply. Employer submits that there was no rollover and that Section 123.9(c) does not apply. In 26 U.S.C. § 408(d)(3)(A)(i) it is provided that for a rollover contribution "the entire amount received (including money and any other property) is paid into an individual retirement account or individual retirement annuity (other than an endowment contract) for the benefit of such individual not later than the 60th day after the day on which he receives the payment or distribution[.]" Gadonas' deposit on November 24, 2003 was well beyond the sixty days.[4]

Next Employer argues that the WCJ did not find, and no evidence supports a

---

**3.** Section 123.9(c) as quoted above provides the exclusion of pension benefits that are rolled over into an IRA or similarly restricted account from workers' compensation offset. Section 123.9(d) provides for the situation where an employee, while receiving workers' compensation benefits from the liable employer, withdraws or otherwise begins to utilize pension benefits from the IRA or other restricted account, allowing for an offset.

**4.** On a different tack, Employer now asserts that none of the pension benefits Gadonas received qualifies as a rollover. It states that each payment is one of a series of substantially equal payments made for the life of Gadonas and his designated beneficiary, and it cites 26 U.S.C. § 402(c)(4)(A), which contains such language in regard to exclusion from income for rollovers from exempt trusts, without additional explanation. Further, it asserts that the limit for a current year contribution to an IRA for the year 2003 was the smaller of $3000 or the individual's taxable compensation, citing 26 U.S.C. §§ 219(b)(1)(B) and 408(a)(1).

finding, that Gadonas was lulled by Employer fraudulently or otherwise such that the mandatory offset could be avoided. It contends that because this issue was not raised in Gadonas' petition for review it is waived, citing *Associated Town "N" Country Builders, Inc. v. Workmen's Compensation Appeal Board (Marabito)*, 95 Pa. Cmwlth.461, 505 A.2d 1358 (1986), *aff'd*, 515 Pa. 564, 531 A.2d 425 (1987). Moreover, this is not a situation involving a disputed claim. Most importantly, it contends, there is no evidence of fraud or deception, nor is there evidence to support the assertion regarding the benefits administrator's advice that the pension benefits would have no effect on Gadonas' workers' compensation. Employer quotes Gadonas' testimony in this regard:

A. I asked, basically, two questions, one, would I pick up medical benefits for my children, because I had spent twenty-three thousand over the last three years for medical; two, would this be offset by Workers' Comp., because I did not want to release any damages or liability? The answer was, no, although Social Security . . . may take an offset.

. . . .

THE WITNESS: I said, would my pension receipt be offset by Workers' Compensation. That is what I asked.

THE JUDGE: Okay.

THE WITNESS: She said, no, although it may be offset by Social Security. I said, I don't care if they take it from Social Security.

. . . .

A. She said that Social Security may take a credit or offset, whatever you want to call it, but not Workers' Comp. She said no. My wife was there.

N.T. November 25, 2003, pp. 21–26; R.R. 70a–75a. This testimony shows, according to Employer, that the benefits administrator did not mislead Gadonas in any way.

He also knew that Employer had an individual responsible for workers' compensation matters but did not contact that individual.

The Court turns first to Employer's claim that Gadonas waived his assertion that he was lulled into a false sense of security because this issue is not stated in his petition for review. As Employer points out, this was one of three matters raised at the first hearing before the WCJ. It was the central point of the testimony of Gadonas. The overall issue in the petition for review is whether Employer is entitled to offset some of the pension benefits that Gadonas received. The argument was raised from the beginning that any pension benefits received more than sixty days before Gadonas deposited money into his IRA should not be subject to offset. In *Associated Town "N" Country Builders*, the Court noted that then Pa. R.A.P. 1513(a) (now Rule 1513(d)) required the petition for review to contain only "a general statement of the objections to the order" and provided that "[t]he statement of objections will be deemed to include every subsidiary question fairly comprised therein." Among the points raised in Gadonas' petition for review is that he presented uncontradicted evidence that within sixty days of receiving his pension benefits he created a self-directed IRA. The claim of misleading arguably is a subsidiary question.

 Equitable estoppel arises in the workers' compensation arena when an employer by its acts, representations or admissions, or by its silence when it ought to speak out, intentionally or through culpable negligence induces another to believe that certain facts exist and that person rightfully acts on the belief, so that he will be prejudiced if the employer is permitted to deny the facts. *Westinghouse Elec.*

*Corp./CBS v. Workers' Compensation Appeal Board (Korach)*, 584 Pa. 411, 883 A.2d 579 (2005). In the absence of expressly proved fraud, estoppel will not be found based upon acts that are as consistent with honest purpose and absence of negligence as with their opposite, and when there is no concealment, misrepresentation or other inequitable conduct, a claimant may not claim that an estoppel arises from his own omission or mistake. *Id.*

 The Court concludes that the circumstances here estop Employer from disputing that the pension payments Gadonas received initially should be treated as rollovers. Gadonas testified that he met with the benefits administrator to discuss the possibility of taking a disability pension. He ultimately applied through the benefits administrator and was informed by her when it was approved. Despite untenable characterization of the testimony Employer quotes, there is no question that one of Gadonas' primary concerns was the effect of a disability pension on his workers' compensation benefits and that the benefits administrator said that there would be none. For the reason he stated, Gadonas did not take steps at that time to ascertain if there were some legal means to shelter his pension benefits. The WCJ credited Gadonas' testimony, and the WCJ's credibility findings are binding on this Court as well as on the Board when they are substantiated by the evidence of record. *See Lehigh County Vo–Tech School.* In this situation, Gadonas would be unjustifiably prejudiced if the sixty-day rule were applied rigidly.

 Employer's assertions that Gadonas' pension benefits may not qualify as rollovers is incorrect. In 26 U.S.C. § 408(a)(1) it is provided: *"Except in the case of a rollover contribution described in subsection (d)(3),* ... no contribution will be accepted unless it is in cash, and contri-

butions will not be accepted for the taxable year on behalf of any individual in excess of the amount in effect for such taxable year under section 219(b)(1)(A)." (Emphasis added.) Section 219(b)(1)(A) relates to the maximum amount of deduction, and Section 219(b)(5)(A) specifies that for 2002 through 2004 the deductible amount was $3000. Pension payments are not subject to offset at all unless they are for inability to work, *Murphy*, and 34 Pa.Code § 123.9 plainly provides treatment of regularly recurring payments and exclusion of payments rolled into IRAs. Gadonas' stated question relates solely to the treatment of the $4500 that he deposited into his IRA, and the Court has now disposed of that issue in his favor.

*ORDER*

AND NOW, this 1st day of August, 2007, the order of the Workers' Compensation Appeal Board is reversed insofar as it modified the order of the Workers' Compensation Judge. The order of the Board is affirmed in all other respects.